PILOT
QUALITY WRITING INSTRUMENTS SINCE 1918

June 8, 1999

State of Connecticut
Employment Security Division
Ansonia CT WORKS
555 Main Street
Ansonia, CT 06401

RE: P. Kelley, S.S. # 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
    Company ID: 91-549-12

To Whom It May Concern:

In response to PeggyAnn Kelley's unemployment claim, attached you will find the following:

- Copy of Peg's June 2, 1999 performance evaluation
- Copy of Peg's response to her March 3, 1999 written warning
- Copy of March 3, 1999 written warning to Peg
- Copy of documentation of my conversation with Peg regarding her March 3, 1999 warning
- Copy of Peg's last two performance reviews

This documentation is being sent in support of the fact that Peg's termination was based on poor performance. You will see that Peg's July 21, 1997 performance review clearly states in the Performance Goals section that "Ms. Kelley will take on additional key account responsibilities during this year and cross train with her cube mate on handling United Stationers in her absence". It is essential in the customer service area that our Rep's be cross-trained. This is an ongoing process that Peg consistently appeared to take issue with. In Peg's July 22, 1998 performance review several performance issues are noted. Specifically the review states that Peg's average orders entered is less than that of others in the Rep position. Peg's response to this is she does what is put in her in-box. We disagree with this comment because orders are distributed to Rep's equally on a daily basis. All Rep's in the department consistently maintain a higher number of average orders entered. This total is not simply one or two more average orders per Rep, the numbers reflect up to ten more orders on average per Rep, per day. Additionally, Peg's July 22, 1998 review states that it is unacceptable during work times to play computer games and this must be eliminated. And, one of Peg's Performance Goals in this particular review was that she communicate in a more positive and less confrontational manner with management, supervisory and personnel in field sales and other departments within the company. Unfortunately the performance issues mentioned above and stated

PILOT CORPORATION OF AMERICA · 60 COMMERCE DRIVE · TRUMBULL, CONNECTICUT 06611
TELEPHONE (203) 377-8800 · MAIN FAX (203) 377-4024

in Peg's performance reviews were not addressed and this resulted in her March 3, 1999 written warning and ultimately in her termination on June 2, 1999.

In regard to training, it may be helpful for you to know that as a company we provide training on both product and procedure when required. This training could be the result of a product change or introduction, a new procedure or a new assignment for an individual. Training needs are constantly evaluated and addressed within appropriate company time frames.

While my schedule does not permit me to attend the hearing on Monday, June 14, 1999, I do hope that this information will assist in your review of this claim. Should you have questions or require additional information, I can be reached at the number noted below, extension 4784.

Sincerely,

*Laurie K. Faulkner*

Laurie K. Faulkner
Human Resources Director

**PILOT**
QUALITY WRITING INSTRUMENTS SINCE 1918

2 June 1999

PERFORMANCE EVALUATION OF PEG KELLEY
Prepared by: John Ferrara, Customer Service Manager

After speaking on March 3, 1999 and again on April 22, 1999 regarding your stated preference not to handle the Mexican accounts and meeting the performance standards set out during your review of 7/22/1998 and the warnings dated above, we have again evaluated your compliance to these standards. In each of these discussions we set out the expectations that you would:
1) Clearly and concisely code and prepare your orders
2) Maintain and average of 21 to 22 orders daily
3) Organize your work area to allow a more effective flow of work
4) Cease playing computer games during working hours
5) Be more positive and cooperative in your dealings with supervisors and co-workers

In monitoring your actions during this time, several issues have come to light. They are:
- The most cursory examination of your entered orders shows that you have not been coding and preparing them properly. Customer numbers have been left off the orders, Information regarding purchase orders numbers, control totals, and special instructions have not been circled or highlighted in any way (as we have previously agreed). Discussions with Customers to resolve problems with orders have not been noted. Careless errors like that of the order for Dealer Services Network, where manual flex pricing which I authorized in writing on the face of the order was not entered. Afterward you explained that you thought 'flex pricing'" was a pen name".
- An analysis of your orders entered over the last thirty days shows that you are averaging 16.25 orders entered per day and 269 line items daily. Even when measuring for the period beginning March 3rd through the present, your entered only averages 17 orders and 291 line items. This is well below our agreed upon standard.
- Your work area remains messy and has resulted in a number of errors. One such is the loss of an order for B&G Associates PO# 7979, that had to be refaxed to us and shipped on a rush basis on eight days (on 4/30/99) after it had been confirmed to the customer on 4/22/99. Further, the entry date was altered to show a 4/15/99 entry date, which is misleading. In another case, an Army Air Force Exchange order on PO# 12 9106 2541 given to you on 4/19/99 was lost and needed to be entered using the confirming copy on 4/23/99 for immediate shipment.
- On three recent occasions you have not helped customers when you should have. On 4/14/99, Patricia of Pyramid School Systems called for ..

Performance Evaluation of Peg Kelley
Page Two

…information regarding a misshipment. You stated that you could not help her because our "computer was down" and you couldn't get the paperwork. This forced another person in Customer Service to service this customer. At the very least you should have taken the information down and offered to get back to her with the answers. Instead you told her you could 'put her on a "waiting list" or she could call back 'in a couple of days, when the computer was working'. Neither response is appropriate from a Pilot Customer Service Representative with over two year's experience. There are resources available that you are aware of when the Metaviewer is unavailable, such as the customer information in the AS400 system.

On April 15,1999, you received an order for Hy-Way Sales (PO# TARYN) and left it in your box until April 21st. Then you entered the order and changed the entry date to April 15th to make it appear that the order hadn't been neglected. I personally checked on the status of this order daily. Only once was it removed from your box during that time. As you are aware, we require that orders be coded, prepared and entered within 24 hours after they arrive.

In another situation, on April 20,1999, Angie from Boise Cascade/ Atlas Office Products called to inquire about her PO# AA8954 which was shipped and billed to the wrong location. Her call was transferred to you by a trainee in our department and you told her that you "couldn't help her, because you didn't enter" the order. You then transferred her to another trainee who had to take the information all over again before the correction could be made. Both these instances damaged relationships with our customers and had an impact on the department by forcing other employees to address the issues and supervisory personnel to address the customers concerns over your lack of responsiveness.

These incidences lead me to the conclusion that you no longer can be an effective Customer Service Representative for Pilot Pen Corporation. Sadly, I must terminate your employment with our company, effective immediately.

Signed: _____ Dated: 6/2/99
John J. Ferrara, Customer Service Manager

| UNEMPLOYMENT NOTICE UC-61 (R. 8/95) | 3. COMPANY NAME, STREET, TOWN, STATE and ZIP CODE ADDRESS TO WHICH NOTICE OF FACT FINDING HEARING WILL BE SENT. | 4. EMPLOYEE'S NAME Peggy Ann Kelley |
|---|---|---|
| 1. CONN. REGISTRATION NO. 9 1 5 4 9 1 2 | Pilot Corp. of America 60 Commerce Drive Trumbull, CT 06611 | 5. EMPLOYEE'S SOCIAL SECURITY NO. 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 |
| 2. NCCI CODE/CLOCK NUMBER 000843 | | 6. WAGES FOR LAST WEEK OF WORK FROM SUNDAY TO DATE LAST WORKED (If less than full week) NO. OF HOURS 14    WAGES $186.90 |

| 7. LENGTH OF MOST RECENT PERIOD OF EMPLOYMENT | 8. DATE LAST WORKED | 9. RETURN TO WORK DATE (Only if definite) | 10. Will any payment be made or has any payment been made which is not wages for work actually performed?  ☐ NO  ☐ YES |
|---|---|---|---|
| 02 YRS.  10 MOS.  11 DAYS | 6/2/99 | | |

11. REASON FOR UNEMPLOYMENT
 1. ☐ Lack of work
 2. ☐ Voluntary leaving
 3. ☐ Discharged for willful misconduct
 4. ☐ Discharged for felonious conduct or larceny
 5. ☒ Other __Performance__

| 12. TYPE OF PAYMENT (If yes above) 1. Severance  2. Vacation  3. Holiday  4. Other | 13. LAST DATE COVERED BY PAYMENT |
|---|---|
| TYPE | No. of Hours/Days Covered | AMOUNT | DATES COVERED |

14. I certify that the information in this notice is true and correct

*Adele Mulhearn* (signature)

Adele Mulhearn, HR Sr. Secr. 6/2/99
SIGNATURE AND TITLE OF OFFICIAL    DATE

Office Use
Clmt. Stmt. Yes ☐