Plaintiff's claims are that from the time Ms. Roberts began her employment at Pilot, Ms. Roberts "commenced a campaign of harassment solely directed to the plaintiff." (Compl. ¶12-17, 20-24.).  As evidence of harassment or discrimination based on race or color, she claims both that "no one else was being scrutinized" and that Ms Roberts scrutinized her work differently than she scrutinized the work of others. (Pl.Dep. 122, 169, 239-41, 243-44.)  As for these differences in types of scrutiny, Plaintiff claims that Ms. Roberts asked her for daily updates of her work status; told Plaintiff that she was not competent; told Plaintiff that she was talking too much; asked her "personal questions" about the vitamins on her desk; and, on one occasion, told Plaintiff she was late while not telling a Caucasian employee she was late.  (Id.)

As part of the alleged scrutiny, Plaintiff alleges that she was the only CSR with a "quota" for the average daily number of orders she was expected to enter.  (Pl.Dep. 148-50, 191.) Plaintiff also alleges that under Ms. Roberts' supervision and as of May 2000, she was not permitted to take her phone off the hook as frequently as she had been allowed under Ms. DeZenzio.  (Pl.Dep. 86.)  She also claims that Ms. Roberts required her to complete customer correspondence during the regular workday, rather than on "overtime,"[8] as Ms. DeZenzio had allowed.

Plaintiff insists that that she was an "exemplary" employee and that her work output was "comparable" to or "average" as compared to that of her fellow CSRs.  (Pl.Dep. 156, 215; Compl. ¶25, 26.)

Plaintiff also claims that the other CSRs were Caucasian and that this, somehow, is

---

[8] Plaintiff refers to time worked in excess of her regularly scheduled workweek of 35 hours per week as "overtime." (Pl.Dep. 96.) Plaintiff does not allege that she worked any time in excess of 40 hours per week which would qualify as "overtime" as that term is defined by the Fair Labor Standards Act. (Pl.Dep. 106-07.)

evidence of discrimination against her. (Pl.Dep. 122, 123.)

Plaintiff also claims that Ms. Bynes, herself a black employee of Pilot's Human Resources Department, discriminated against Plaintiff on the basis of race or color because she told Plaintiff that if she was not happy she should look for a new job.  (Pl.Dep. 238.)  Plaintiff offers only her belief that "black people do lots of time[s] discriminate against other blacks" and that she believed Ms. Bynes "was going to do what she was told" in support of her claim that Ms. Bynes' advice to her was race-based.  (Pl.Dep. 193-94.)  Plaintiff further alleges that Mr. Ferrara's failure to be adequately concerned with Plaintiff's conflict with Ms. Roberts was race-based.  (Pl.Dep. 233.)

## III.    ARGUMENT

### A.    Standard For Summary Judgment

Rule 56(c) provides that a party is entitled to summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Once a motion for summary judgment is filed, the non-moving party must offer such proof as would allow a reasonable jury to return a verdict in her favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In determining whether summary judgment should be granted, the United States Supreme Court has explained that:

> [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted.

Anderson, 477 U.S. at 249-50 (citations omitted).  The nonmoving party may not rely on conclusory allegations to create disputed factual issues. See Hussein v. Hotel Employees & Rest. Union, Local 6, 108 F. Supp. 2d 360, 365 (S.D.N.Y. 2000) (citing D'Amico v. City of New

York, 132 F.3d 145, 149 (2d Cir. 1998)). Rather, the nonmoving party must present "significant probative evidence tending to support the complaint." First Nat'l Bank of Ariz. v. Cities Servs. Co., 391 U.S. 253, 290 (1968).  However, the mere existence of a scintilla of evidence in support of the nonmoving party's case or metaphysical doubt as to the material facts will not prohibit summary judgment.  Anderson, 477 U.S. at 252; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The "Second Circuit has made clear" that summary judgment is available to defendants in employment discrimination cases.  Ricks v. Conde Nast Publications, Inc., 92 F.Supp.2d 338, 343 (S.D.N.Y. 2000) (citing McLee v. Chrysler Corp., 38 F.3d 67, 68 (2d Cir. 1994)). Specifically, summary judgment in favor of the employer may be granted "[w]here no evidence exists or only conclusory allegations of discrimination have been offered to suggest that an employer's motives are improper. . . ." Ricks, 92 F.Supp.2d at 343 (citing Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985)).  That is, discrimination claims are subject to the same principles governing summary judgment in all cases:

> After all, a party seeking to defeat a summary judgment motion cannot rely upon "conclusory allegations or denials," but rather must set forth "concrete particulars" showing that a trial is needed.  Mere speculation or conjecture as to the true nature of facts cannot overcome the motion.  The responding party "must show the existence of a disputed material fact in light of the substantive law."  In the absence of any disputed material fact, summary judgment is appropriate.

Ricks, *supra* at 343-44 (internal citations omitted) (citing *inter alia* Nat'l Union Fire Ins. Co. v. Deloach, 708 F.Supp. 1371, 1379 (S.D.N.Y. 1989); Lipton v. Nature Co., 71 F.3d 464, 469 (2d Cir. 1995); Peer Int'l Corp. v. Luna Records, Inc., 887 F.Supp. 560, 564 (S.D.N.Y. 1995)).

**B.     Summary Judgment In Favor Of Defendant Is Warranted On Plaintiff's Claim Of Race/Color Discrimination**

The Second Circuit repeatedly instructs that the "ultimate issue" in any employment discrimination case is "whether the plaintiff has met her burden of proving that the adverse employment decision was motivated at least in part by an 'impermissible reason'" Stratton v. Dept. for the Aging, 132 F.3d 869, 878 (2d Cir. 1997).  See also James v. New York Racing Ass'n., 233 F.3d 149, 156 (2d Cir. 2000).

Under Title VII, it is unlawful for an employer to take adverse employment action[9] concerning "any individual . . . because of such individual's race."  42 U.S.C. § 2000e et seq.  To establish a prima facie case of such discrimination under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981), Plaintiff must show that she: "(1) is a member of a protected class; (2) was performing [her] duties satisfactorily; (3) was discharged; and that (4) [her] discharge occurred under circumstances giving rise to an inference of discrimination on the basis of [her] membership in the protected class."  Lindsay v. New York Univ., 2002 U.S. Dist. LEXIS 393, *17 (S.D.N.Y. Jan. 11, 2002) (quoting Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000)).  See also Farias v. Instructional Sys., Inc., 259 F.3d 91, 98 (2d Cir. 2001); Hogan v. State of Connecticut, 220 F.Supp.2d 111, 117 (D.Conn. 2002).

If Plaintiff succeeds in establishing a prima facie case, the burden of production shifts to Pilot to articulate a legitimate, nondiscriminatory reason for the adverse decision or action.  See

---

[9] The Second Circuit has applied this same framework to claims of "racially-motivated abuse." Ricks v. Conde Nast Publications, Inc., 2001 U.S. App. LEXIS 4244, **2 (2d Cir. Mar. 20, 2001). (Opinions not included in an official reporter are attached at Tab G.)  Thus to the extent Plaintiff's single count Complaint purports to state that type of claim as well as a discriminatory discharge claim, the same framework under McDonnell Douglas applies.  Id.

McDonnell-Douglas, 411 U.S. at 802.  Once Pilot satisfies this burden, the presumption of discrimination created by the prima facie case drops out of the analysis, and Pilot "will be entitled to summary judgment . . . unless [Plaintiff] can point to evidence that reasonably supports a finding of prohibited discrimination."  See James, 233 F.3d at 154.  In other words, once Pilot articulates a non-discriminatory reason for its employment actions, the burden shifts back to Plaintiff to prove that Pilot's proffered reasons are pretext for unlawful discrimination.  See Austin v. Ford Models, Inc., 149 F.3d 148, 153 (2d Cir. 1998); Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996).

> **1.    Plaintiff Cannot Establish a Prima Facie Case of Discrimination Based on her Race or Color.**

Pilot does not dispute for purposes of summary judgment that Plaintiff is a member of a protected class and was discharged.  However, Plaintiff cannot establish that she was performing her duties satisfactorily or  that any employment actions occurred under circumstances giving rise to an inference of discrimination based on her membership in a protected class.  Graham, 230 F.3d at 38.

> **(a)    Plaintiff cannot establish that she was performing her duties satisfactorily.**

The indisputable evidence establishes that Plaintiff was not performing her duties satisfactorily.  See Ricks, 2001 U.S. App. LEXIS at **4 (citing McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir 1997); *and* Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133 (2000)).  Plaintiff testified that the tracking of the CSRs' order entry on the Order File Summary forms are accurate and that the tracking was not race based.  (Pl.Dep. 151-52, 154, 157; D.Ex.9/Tab F.)

These forms establish:

| 1999 Month/CSR | Monthly Average[10] Daily Orders Entered | Monthly Average Daily Lines Entered | 2000 Date/CSR | Monthly Average Daily Orders Entered | Monthly Average Daily Lines Entered |
|---|---|---|---|---|---|
| July 1999 | | | Jan. 2000[11] | | |
| Carre | 14.2 | 233.9 | Carre | 15 | 225.1 |
| Page | 14.7 | 295.7 | Page | 17.1 | 244.7 |
| Saska | 18.3 | 331.5 | Saska | 33.2 | 537.8 |
| **Davis** | **14.4** | **138.1** | **Davis** | **18** | **185.8** |
| Aug. 1999 | | | Feb. 2000 | | |
| Carre | 11.7 | 212.8 | Carre | 11.4 | 199.2 |
| Page | 13.9 | 244.6 | Page | 15.4 | 261 |
| Saska | 12.3 | 263.6 | **Saska** | 29.1 | 559.4 |
| **Davis** | **11.9** | **125.6** | **Davis** | **12.8** | **207.7** |
| | | | | | |
| Sept. 1999 | | | Mar. 2000 | | |
| Carre | 17.5 | 252.8 | Carre | 12.2 | 231.3 |
| Page | 23.1 | 294.4 | Page | 16.9 | 325.1 |
| Saska | 43.6 | 542.6 | Saska | 24.9 | 521.1 |
| **Davis** | **12.7** | **172.7** | **Davis** | **9.3** | **152.6** |
| Oct. 1999 | | | Apr. 2000 | | |
| Carre | 15 | 201.2 | Carre | 12.8 | 155.1 |
| Page | 14.3 | 272.4 | Page | 21.1 | 273.1 |
| Saska | 26.5 | 453.1 | Saska | 32.4 | 546.2 |
| **Davis** | **12.7** | **172.7** | **Davis** | **18** | **196.1** |
| Nov. 1999 | | | May 2000 | | |
| Carre | 14.1 | 196.1 | Page | 23.3 | 274.7 |
| Page | 13.3 | 253.2 | Saska | 50.3 | 711.3 |
| Saska | 31.7 | 443.8 | **Davis** | **10.4** | **153.2** |
| **Davis** | **10.5** | **154.3** | | | |
| | | | June 2000 | | |
| | | | Page | 19.7 | 111.8 |
| | | | Saska | 38.7 | 341.5 |
| | | | **Davis** | **8.5** | **125.1** |

(D.Ex.9/Tab F.)

---

[10] Averages calculated from Order File Summary forms. (D.Ex.9/Tab F.) Averages do not include days on which a CSR worked, but did not enter any orders.

[11] Defendant was not able to locate its Order File Summary forms from December 1999. It cannot determine at this date whether the originals of those forms were among the documents that Plaintiff stole from Pilot beginning on or about May 2000. (Pl.Dep. 151-53, 154, 174.) Those records were not among those produced by Plaintiff to Pilot. (See D.Ex.9/Tab F.)

This undisputed evidence, as well Plaintiff's own admissions, establish that she was not performing her job duties satisfactorily. (See D.Ex.8/Tab D (Davis0690, 0691, 0695, 0696, 0697, 0698, 0708, 0710, 0711, 0714, 0723, 0725, 0726, 0728, 0731, 0732, 0736, 0737, 0738, 0739, 0742, 0775).) As a result, she cannot establish a prima facie case and summary judgment in favor of Pilot should be granted. See Graham, 230 F.3d at 38.

(b)    **Plaintiff cannot prove that her discharge occurred under circumstances giving rise to an inference of discrimination.**

Plaintiff also cannot meet her prima facie burden because she cannot show that she was subject to any adverse employment action under circumstances giving rise to an inference of discrimination. See Woods v. New York City Dept. of Sanitation, 2001 U.S. App. LEXIS 7254, **2-3 (2d Cir. Apr. 16, 2001). To survive summary judgment, Plaintiff must present evidence that allows for a reasonable inference of discrimination as distinguished from evidence that gives rise to mere speculation and conjecture. See Bickerstaff, 196 F.3d at 448. "This undertaking is not one of guesswork or theorization. After all, an inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist." Id. (internal citations and quotations omitted). An inference of discrimination cannot be drawn "from thin air." Norton v. Sam's Club, 145 F.3d 114, 119 (2d Cir. 1998).

Plaintiff's claims are based on conclusory, speculative allegations. She has been unable to identify any facts from which an inference of race discrimination can be drawn. As discussed above, all of the evidence establishes that Pilot merely required Plaintiff to perform at same level and under the same conditions as the other CSRs, that Pilot worked with Plaintiff in an effort to improve her performance and that Plaintiff failed to meet the expectations of a CSR.

At her deposition, Plaintiff identified the specific incidents she believes were race-based. As discussed above, Plaintiff testified that she is not relying on a single incident that occurred

21

prior to Ms. Roberts arrival at Pilot on April 3, 2003. (Pl.Dep. 77-78, 80-81.) Plaintiff's entire case rests on events that occurred between April 3 and June 29, 2000. (Id., Pl.Dep. 79, 223-24.) She claims that three individuals – Mr. Ferrara, Ms. Bynes and Ms. Roberts engaged in discriminatory acts toward her. (Pl.Dep. 79, 193-95, 233, 237-38, 239.) None of these incidents support an inference of race-based discrimination.

<i>(i)    Mr. Ferrara's conduct.</i>

With respect to Mr. Ferrara, Plaintiff acknowledged that the "only incident [she] believe[s] where John Ferrara discriminated against [her] based on [her] race is when [she] went to speak to him to share [her] concerns[12] about Patty [Roberts] and he didn't seem interested in hearing them." (Pl.Dep. 237.)

Assume for purposes of this Motion that Mr. Ferrara was not interested in hearing Plaintiff's concerns. Only wild speculation could connect this lack of concern with Plaintiff's race – the very type of evidence that the Second Circuit in <u>Bickerstaff</u> found could not support an inference of discrimination.

Beyond that, a Caucasian Customer Service employee Sandy Landro also complained to Mr. Ferrara about Ms. Roberts. (Pl.Dep. 237.) Plaintiff conceded that she has no evidence to establish that Mr. Ferrara responded differently to Ms. Landro. (Id.) In fact, Plaintiff testified that Mr. Ferrara "just didn't seem to be concerned with whatever it was. If **anything** interrupted the flow of the department, he was not – he didn't want to deal with it." (Pl.Dep. 233-34 (emphasis added).) By her own testimony, Mr. Ferrara's lack of concern had nothing to do with her race and everything to do with the interruption of the flow of the work in the department.

---

[12] Plaintiff admits that her allegation that Ms. Roberts was discriminating against her on the basis of race was <u>not</u> among these "concerns." (Pl.Dep. 238.)

Beyond Plaintiff's failure to provide any facts from which an inference of discrimination can be based relating to Mr. Ferrara, an undisputed fact exists which creates an inference that Mr. Ferrara did *not* discriminate against Plaintiff based on her race. Mr. Ferrara was primarily responsible for both the decision to hire Plaintiff as a temporary employee in June 1999 and to promote Plaintiff in August 1999 to a full-time regular CSR position. (Pl.Dep. 36, 61, 64.) Mr. Ferrara was also the person with the ultimate responsibility for terminating Plaintiff's employment in June 2000. (Pl.Dep. 223-24; D.Ex. 7.) These events occurred within just one year. The fact that others were involved at certain steps (e.g., Ms. DeZenzio and Ms. Bynes at hiring and Ms. Roberts at termination) does not affect the import of the evidence of Mr. Ferrara's willingness to hire and promote Plaintiff irrespective of her race or color. Ricks, 92 F.Supp.2d at 346-47. Because Mr. Ferrara both hired Plaintiff and discharged her months later, it is unlikely that he "would hire an African American only to fire her shortly thereafter because she is African American." Ricks, 2001 U.S. App. LEXIS at **8-9 (citing Grady v. Affiliated Central, Inc., 130 F.3d 553, 560 (2d Cir. 1997)). These facts "give rise to an inference, not of discrimination, but of nondiscrimination." Ricks, 92 F.Supp.2d at 346-47 (citing Grady, 130 F.3d at 560).

*(ii)     Ms. Roberts' conduct.*

With respect to evidence of alleged race-based discrimination by Ms. Roberts, Plaintiff testified as follows:

Q.     All the incidents where you believed [Ms. Roberts] acted the way she acted toward you because of your race?

. . . .

A.     Patty was there less than a week and she started scrutinizing how long I stayed in the bathroom, how long orders took for me to be entered, supposedly my talking with other co-workers. She would come to me daily and tell me she wanted to have a meeting with me which took me away from my workload. She would come to me and ask me why don't I just tell her that I'm not competent to do the job. She would ask me personal questions.

23

(Pl.Dep. 239-40.)  Plaintiff also claims that Ms. Roberts "accused" Plaintiff of being late on one day and did not similarly counsel the Caucasian CSR who arrived at the same time as she; and that Ms. Roberts inaccurately counseled Plaintiff for talking too much to a co-worker. (Pl.Dep. 115, 119, 240-41.)  According to the Complaint, Plaintiff was ultimately discharged as a result of the allegedly discriminatory scrutiny.[13]  (Compl. ¶24.)

Plaintiff's own testimony establishes that there is nothing from which to infer discrimination concerning the alleged adverse action.  Plaintiff admitted with respect to Ms. Roberts' "scrutiny" of her work that Ms. Roberts counseled **all of the CSRs** concerning what they needed to do, but counseled Plaintiff more frequently than Caucasian CSRs and African-American Customer Service employee Wendy Jennings.  (Pl.Dep. 244-45, 247.)  The only logical conclusion from her testimony is that the counseling had nothing to do with race.

Plaintiff admits that Ms. Roberts tracked order entry information on **all of the CSRs** and that she has no evidence that Ms. Roberts spent any more time reviewing Plaintiff's reports than the reports by the other CSRs or if there was any reason to do so.  (Pl.Dep. 170-71.)

Plaintiff also admits that Ms. Roberts **"clock[ed] everyone" in the CSR group** as the arrived to work and, therefore, did not give Plaintiff's arrival time(s) any race-based attention. (Pl.Dep. 172; 240-41.)

Plaintiff clarified that her disagreement with Ms. Roberts "continuously" approaching Plaintiff about performance issues was because Ms. Roberts did so "in a public for[u]m." (Pl.Dep. 173.)  Plaintiff concedes that Ms. Roberts **also publicly approached Ms. Carre, a**

---

[13] At no time during her deposition does Plaintiff allege that Caucasian employees were not subject to discharge for poor performance – only that allegedly discriminatory scrutiny lead to her discharge and that she believes she was not a poor performer.  (See Pl.Dep. 156-57; Compl. ¶24-26.)

**Caucasian CSR**, about issues she had with her performance, and never did so with Ms.

Jennings. (Pl.Dep. 173-74.)

Plaintiff explained that the "personal questions" by Ms. Roberts with which she takes

issue concerned vitamins Plaintiff kept on her desk, as opposed to Ms. Roberts' inoffensive

questions about Plaintiff's family. (Pl.Dep. 242-43, 246.) Plaintiff's diary establishes that Ms.

DeZenzio similarly pressed Plaintiff about whether an appointment was for medical reasons.

(D.Ex.8/Tab D (Davis0718).) Plaintiff cannot explain – and no logic supports -- why Ms.

DeZenzio's medical-related question was not race-based while Ms.Roberts question about her

vitamins was.

Ms. DeZinizio also counseled Plaintiff to stay focused on her order entry work when she

found Plaintiff to be talking too much to co-workers. (D.Ex.8/Tab D (Davis0697).) Plaintiff

testified that she does not consider anything Ms. DeZenzio said or did to be race-based

discrimination or harassment. (Pl.Dep. 77-78.) Plaintiff similarly fails to offer any evidence

distinguishing Ms. DeZenzio's apparently inoffensive questions and counseling from Ms.

Roberts' inquiries.

Plaintiff further admits that she cannot reconcile Ms. Roberts' favorable treatment of

fellow African-American Customer Service employee Wendy Jennings with the allegation of

discrimination. (See Pl.Dep. 112.) Plaintiff concedes that Ms. Roberts permitted Ms. Jennings

to complete consumer correspondence on "overtime" (Pl.Dep. 97-98); Ms. Roberts did not

publicly approach Ms. Jennings about performance issues (Pl.Dep. 174); Ms. Roberts did not tell

Ms. Jennings that she was "not competent" (Pl.Dep. 245-46); and Ms. Roberts did not give Ms.

Jennings daily instructions about her work. (Pl.Dep. 247.) Additionally, it is undisputed that

after the termination of Plaintiff's employment, Ms. Roberts and Mr. Ferrara promoted Ms.

Jennings.  (Faulkner Aff. ¶9.)

*(iii)     Ms. Bynes' conduct.*

Plaintiff testified that she believes Ms. Bynes advice to her that if she was not happy at Pilot she should start looking for a new job was race-based discrimination.  (Pl.Dep. 238.) Plaintiff admits that this accusation against Ms. Bynes is just speculation and she has no specific information to support her claim that Ms. Bynes' advice was race-based.  (Pl.Dep. 195-96.) Specifically, in support of this allegation, Plaintiff offers only offers only her belief that "black people do lots of time[s] discriminate against other blacks" and that she believed Ms. Bynes "was going to do what she was told" in support of her claim that Ms. Bynes' advice to her was race-based.  (Pl.Dep. 193-94.)  This is the very type of baseless speculation that cannot support an inference of discrimination. Bickerstaff, 196 F.3d at 448.

*(iv)     Number of African-American CSRs and employees in the department.*

Plaintiff also claims that the fact that she is the only African-American CSR in a group of four and that there are only two African-American employees in the department of thirteen somehow suggests that Pilot discriminated against her based on her race.  (See Pl.Dep. 122-23.) In an attempt to explain her baseless allegation, Plaintiff contends that Pilot should have recruited by saying that the Company is looking for qualified minorities to fill positions in Customer Service.  (Pl.Dep. 124.)  Apart from the fact that her proposed tactic is prohibited by Title VII, Plaintiff's contention that Pilot's hiring process was somehow insufficient and discriminatory is not supported by any evidence.  In fact, Plaintiff's own testimony contradicts such a claim.  Plaintiff admits that there was nothing discriminatory in the hiring process Pilot applied to select her first as a temporary and then a full-time regular CSR.  (Pl.Dep. 77-78.) Plaintiff also admits that she has no knowledge of Pilot's recruiting and hiring practices,

26

including any facts concerning treatment or numbers of qualified minority applicants. (Pl.Dep. 123.)

Plaintiff's claim that having "only" 1 African-American in 4 CSRs (or even 2 of 13 Customer Service employees) is evidence of discrimination must fail under the law. (See Pl.Dep. 122-23.) The sampling Plaintiff proffers is too small to have any probative value. See Bickerstaff, 196 F.3d at 450 (citing Pollis v. New Sch. For Soc. Research, 132 F.3d 115, 121-22 (2d Cir. 1997)) (finding Plaintiff's "sample of one" inadequate to be probative of discrimination). Further, Plaintiff cannot dispute that the figures resulting from her claim (CSRs – 25% African-American; Customer Service employees – more than 15% African-American) are not discriminatorily disproportionate to, and actually *exceed* the percentage of African-American in the general population (12.9%).[14] Thus, Plaintiff's "statistics" cannot be considered reliable or probative of anything. Bickerstaff, 196 F.3d at 449-50 (citing *inter alia* Bazemore v. Friday, 478 U.S. 385, 400 n.10 (1986) (Brennan, J., joined by all other Members of the Court, concurring in part)).

> (v)    *Pilot's discharge of Peggy Ann Kelley defeats Plaintiff's claim that her treatment occurred under circumstances giving rise to an inference of discrimination.*

Plaintiff was hired to fill the position created when Pilot terminated Caucasian CSR, Peggy Ann Kelley, for poor performance under circumstances remarkably similar to those in this case. (Faulkner Aff. ¶8, Att. A; Pl.Dep. 37-38, 61-62.) Pilot counseled Ms. Kelley that she was

---

[14] Figure taken from http://factfinder.census.gov/ (Table QT-P5 "Race Alone or in Combination: 2000") as percentage of U.S. population reported in 2000 Census as "Black or African American alone or in combination."

expected to maintain an average of 21 to 22 orders entered per day. (Faulkner Aff. ¶7, Att. A.)

Ms. Kelley failed to maintain that average and Pilot terminated her employment. (Id.) Plaintiff

does not dispute that Ms. Kelley was discharged for unsatisfactory performance. (Id.)

> **2.    Even If Plaintiff Could Establish A Prima Facie Case, All Actions And Decisions Concerning Her Employment Were Based On Legitimate, Non-Discriminatory Reasons**

Even assuming for purposes of argument that Plaintiff could establish her prima facie

case, she cannot overcome Pilot's articulated legitimate, non-discriminatory reason for all of the

employment actions related to her – Plaintiff's poor performance. It is well-established that this

burden of production on Pilot is not onerous. Ortiz v. Prudential Ins. Co., 94 F. Supp.2d 225,

234 (D. Conn. 2000). To the contrary, "[t]he burden on the defendant is light, as it **need not**

**persuade** the Court that it was actually motivated by the proffered reasons. It is sufficient if the

defendant's evidence raises a genuine issue of fact as to whether it discriminated against the

plaintiff." Id. (emphasis added). Pilot's reasons, discussed in detail above, for all actions related

to Plaintiff's employment easily meet this level of proof. (See Sec. B.1, supra.)

> **3.    Plaintiff Cannot Show That Pilot's Legitimate, Non-Discriminatory Reasons Are Pretextual**

Inasmuch as Pilot has articulated its legitimate, non-discriminatory reasons for its actions

related to Plaintiff's employment, it is entitled to summary judgment unless Plaintiff can point to

admissible evidence that supports, by a preponderance, a finding of prohibited discrimination.

See Farias v. Instructional Sys., Inc., 259 F.3d 91, 98 (2d Cir. 2001) (quoting James, 233 F.3d at

154). At this stage, the Court's factual inquiry "proceeds to a new level of specificity." Fisher v.

Vassar College, 114 F.3d 1332, 1336 (2d Cir. 1997). "This inquiry focuses on whether there is

sufficient evidence in the record from which a reasonable trier of fact could find in favor of

plaintiff on the ultimate issue – here, whether there is sufficient evidence to support an inference

of discrimination on the basis of race." Lindsay, *supra*, at *17 (citing James, 233 F.3d at 156).

Plaintiff cannot satisfy this burden of proving with specific evidence that the legitimate

nondiscriminatory reason for her discharge, her documented and sustained poor performance,

was not the true reason, but was pretext for discrimination. Nor does she have *any* other

evidence that race or color was a factor in her discharge. As such, summary judgment in favor of

Pilot should be granted and Plaintiff's claim dismissed in its entirety. Rose v. Orville Sterling,

969 F.Supp. 865 (1997) (quoting Meiri, 759 F.2d at 998 (where employer offered legitimate

nondiscriminatory reason for discharge, "'purely conclusory allegations of discrimination absent

any concrete particulars,' will be insufficient to withstand defendant's motion for summary

judgment").

### C.    Summary Judgment In Favor Of Defendant Is Warranted On Plaintiff's Claim Of Hostile Environment Harassment

"An employer is liable under Title VII for allowing a work environment to become

'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or

pervasive to alter the conditions of the victim's employment and create and abusive

environment.'" Ricks, 2001 U.S. App. LEXIS at **9 (quoting Harris v. Forklift Systems, Inc.,

510 U.S. 17, 21 (1993)). In order to proceed with such a claim, Plaintiff must show not only that

the "working environment is . . . hostile or abusive, 'but **actually constituted discrimination**

**because of race**.'" Ricks, 2001 U.S. App. LEXIS at **9 (quoting Oncale v. Sundowner

Offshore Services, Inc., 523 U.S. 75, 81 (1998)) (internal quotation marks and alterations

omitted) (emphasis added).

Plaintiff relies on precisely the same conduct as she does for her disparate treatment

claim as for her harassment claim. (Compl. ¶27.) As discussed in detail above, although

Plaintiff alleges that she was treated differently than Caucasian CSRs, the evidence including

Plaintiff's own testimony shows that those other CSRs were subject to the same conditions of employment. (See Sec. B.1(b), supra.) The evidence also shows that another African-American member of the Department received the same allegedly more favorable treatment as Caucasian employees that Plaintiff claims she was denied. (See Sec. B.1(b), *supra*.) In other words "there is no indication that any [of the alleged] conduct was at all related to [Plaintiff's] race." <u>Ricks</u>, 2001 U.S. App. LEXIS at **10. Plaintiff's "impression" that conduct was related to her race is insufficient to establish that conduct was discriminatory. <u>Id.</u> It follows that summary judgment in favor of Pilot should be granted and the Complaint dismissed in its entirety.

## IV.    CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court grant its motion for summary judgment pursuant to Fed. R. Civ. P. 56, and dismiss Plaintiff Lila Davis' Complaint in its entirety.

PILOT CORPORATION OF
AMERICA,

BY:

Michael J. Soltis
CT 07413
Alison Jacobs Wice
CT 21771
JACKSON LEWIS LLP
177 Broad Street
P.O. Box 251
Stamford, CT  06904-0251
(203) 961-0404
(203) 324-4704 (Facsimile)
soltism@jacksonlewis.com
wicea@jacksonlewis.com

30

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing MEMORANDUM OF LAW has

been served, via regular mail, postage prepaid, to counsel of record at the following address:

Max F. Brunswick, Esq.
12 Trumbull Street
New Haven, Connecticut 06511

This 27th day of February, 2004.

Alison Jacobs Wice

31