
FILED

2004 AUG 19 P 1: 56

U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Lila R. Davis,<br>Plaintiff | : NO. 3:01 CV 2204 (DJS)<br>:<br>: Jury Trial Demanded<br>: |
| Pilot Corporation of America,<br>Defendant | : August 16, 2004 |

### PLAINTIFF'S RESPONSE TO DEFENDANT'S LOCAL RULE 56(a)(1) STATEMENT

Now comes the Plaintiff, Lila R. Davis, by counsel and pursuant to Local Rule 56(a)(2) Statement in response to the Defendant's Local Rule 56(a)(1) Statement.

1. Admit.

2. Plaintiff is unable to admit or deny Ferrara's job responsibilities. However, Plaintiff does admit that Ferrara was her manager in her direct chain of command while she was employed in the Defendant's Customer Service Department.

3. Plaintiff is unable to admit or deny Judy DeZenzio's job title. However, Plaintiff does admit that DeZenzio was her direct supervisor while she was employed in the Defendant's Customer Service Department and that DeZenzio continued in this position until sometime in March of 2000.

4. Plaintiff is unable to admit or deny Patty Roberts' job title. However, Plaintiff does admit that Roberts was her direct supervisor while she was employed in the Defendant's Customer Service Department as of April 3, 2000.

5. Plaintiff is unable to admit or deny the nature of Roberts' employment outside of working for the Defendant.

6. Plaintiff is unable to admit or deny the nature of Roberts' employment outside of working for the Defendant.

7. Plaintiff is unable to admit or deny the nature of Roberts' employment outside of working for the Defendant. Plaintiff is unaware of whether Roberts applied time study methodology in carrying out her work responsibilities.

8. Plaintiff is unable to admit or deny Roberts' employment title but does admit that she supervised the workers named in ¶ 9.

9. Admit.

10. Admit

11. Deny that only Plaintiff and Saksa handled data entry and customer service calls. Herta Page, Joyce Carr, Sandra Landro, and Donna Baldino handled data entry and customer service calls

12. Admit that Landro handled larger scale national accounts, but deny that she handled larger scale national accounts solely.

13. Admit.

14. Plaintiff is unable to admit or deny whether or not Keller maintained such a log of orders.

15. Plaintiff is unable to admit or deny as she was never acquainted with this person.

16. Plaintiff is unable to admit or deny as she was never acquainted with this person.

17. Deny. Plaintiff was hired *directly by Chantay Bynes*. Immediately after she was hired, Ms. Bynes, one of the Defendant's Human Resources employees, instructed Plaintiff to report to MacIntyre Associates, a temporary employment agency in Shelton, Connecticut. She was told by Ms. Bynes that her employment with the Defendant would be processed by MacIntyre Associates. Prior to being hired directly by the Defendant and being instructed to report to MacIntyre after she was notified that she was hired, Plaintiff had never had any dealing with MacIntyre Associates.

18. This is a misstatement of the Plaintiff's testimony. Plaintiff testified that for the first *two (2) weeks* of her employment she did not answer telephones because she was being trained. During her first week of employment, the Plaintiff did not even have an assigned telephone at her desk. Plaintiff admits that during her first two weeks of employment she did not answer telephones.

19. Deny that Plaintiff was hired by Mr. Ferrara or Ms. DeZenzio. Admit that she was notified that she was hired by Ms. Laurie Faulkner, the Defendant's Human

        Resources Director, by letter dated August 4, 1999, and that her full time permanent employment was to commence on August 16, 1999.

20. Admit that Plaintiff kept a dairy tracking *some* of her daily tasks, the dairy was in no way an exhaustive list of the daily tasks she performed. In fact, due to time constraints, there were often, almost daily, incomplete entries in the said dairy.

21. Admit that DeZenzio prepared Plantiff's 90 day evaluation and the portions cited by defense counsel. Plaintiff denies that DeZenzio documented that Plaintiff did not participate enough in the efforts of the CSR group. It is interesting to note that on the one hand, the defense counsel has tried to insinuate that the Plaintiff and Diane Saksa were the only two who performed the same duties, thus differentiating Plaintiff's duties from those of her other coworkers (see ¶ 8-11). Yet, defense counsel has tried to draw the conclusion (incorrectly) that the Plaintiff did not participate in the CSR group efforts. Query: if the Plaintiff's work responsibilities are different from that of her co-workers, than what need was there for Plaintiff to participate in group efforts? The Defendant (defense counsel) is trying to make an argument that is clearly contradictory, either the Plaintiff had duties that were unique to the group of CSR employees at large, or they had common work that necessitated that they work together. Be that as it may the 90 day evaluation also notes that Lila is on her way to becoming a viable member of the Customer Service Team. . . Lila *currently performs her daily assignments* of order entry, customer inquiries, credits and processing returns with only occasional assistance." These statements contradict any conclusion that she was not performing her job in a satisfactory manner.

22. Admit that Plaintiff made the following written statements in response to the evaluation: "Judy, I have spoken with Herta [Page] and she is willing to sit with me on helping me with keying. I am glad to know that I'll have the *second half of my training* with John on Thursday. I will work on participating more within the group and hand delivering message {sic}. I do use email, auto return on the phone, etc., to save time and to try to keep up with technology. Having a second

telephone line will help when I need to call another rep and keep the customer on hold. I am striving and will soon be able to process my orders within a 24 hour span. I do find there are times that researching past orders and tracking other issues takes a great deal of time. I'm not sure how this process can be sped up. I would like to be able to continue to use my half hour to process orders or take care of other issues that come up daily. (half hour not on phones.) I will continue to come to you if I have questions or issues. Lila 11/17/99."

Admit that Plaintiff intended to arrange for additional training with Herta Page to improve "keying" but deny that she sought training from Herta for the purpose of improving her "speed." Plaintiff denies that her use of the word "keying" is the equivalent of data entry "speed." She agreed to work with Herta Page after Judy DeZenzio *suggested it to the Plaintiff*. Just prior to writing the 90 evaluation, DeZenzio suggested to Plaintiff that she seek to train with Page because Page had the least amount of "bad habits" as far as keying technique was concerned (as compared to the other CSR employees). DeZenzio had also confided with the Plaintiff that she wanted her to become familiar with processing Page's accounts in the near future in preparation for learning how to handle Page's accounts. More importantly, Plaintiff further agreed to seek training from Page due to John Ferrara's failure to timely complete Plaintiff's training and Plaintiff considered Page a logical choice to seek help from based on DeZenzio's personal endorsement. Moreover this training with Page did not take place until February/March, 2000. Deny that Plaintiff was not performing her full duties. Deny that Plaintiff asked to be excused from taking customer service calls while she worked on order entry. DeZenzio *daily* allowed *ALL* CSR's to refrain from answering telephones for a 30-45 minute period. All CSR's took advantage of this every day. This was not a special term of employment given to Plaintiff just because she was a "new employee."

23. Admit that Plaintiff sent a memo to her supervisor via email with the following written statement: "Judy, I need to let you know that I don't even feel like I'm putting a dent in the orders. I am doing the best I can and between training, phone and research I feel like I am in a sink hole." Admit that Plaintiff and her other co-workers were all having trouble keeping up with their order entry assignments and other CSR responsibilities. As of November, 1999, along with handling her normal order entry assignments and other CSR responsibilities, Plaintiff was trained to serve as back up for Diane Saksa, Sandy Landro and Herta Page. Due to the fact that in late November, 1999, the Plaintiff had been pulled from her normal order entry assignments and other CSR responsibilities to spend time training to learn their how to handle responsibilities, as well as to participate in her annual review process she fell behind in her work for several days.

24. Plaintiff is unable to admit or deny what Mr. Ferraro requested Ms. DeZenzio to do as she was not privy to their conversation. In fact, Plaintiff had never seen the attachment referred to (Att. A) until discovery responses were exchanged between the parties earlier in the litigation process.

25. Plaintiff is unable to admit or deny what Ms. Roberts was prepared and eager to do, nor is Plaintiff privy to her management background or training.

26. Admit that Ms. Roberts met individually with Plaintiff in early April. Plaintiff is only able to admit that she understood that she was instructing and explaining to Ms. Roberts what her daily responsibilities were.

27. Plaintiff is unable to admit or deny what conversations took place or what information was exchanged between Ms. Roberts and Ms. Keller as she was not privy to their conversations or meetings.

28. Admit.

29. Admit.

30. Plaintiff is unable to admit or deny what records Ms. Roberts reviewed.

31. Plaintiff is unable to admit or deny what records Ms. Roberts reviewed or what conclusions she drew as a result of her review.

32. Admit.

33. Admit that the CSRs completed daily reports. Plaintiff is unable to admit or deny whether or not Ms. Roberts tracked the daily order entry numbers on the Order File Summary form for each CSR.

34. Plaintiff is unable to admit or deny what Ms. Roberts' understanding was in comparison to Ms. DeZenzio's.

35. Deny that Plaintiff informed Ms. Roberts that "she" regularly took her phone off the hook for 30 to 45 minutes per day. What Plaintiff told Ms. Roberts was that Ms. DeZenzio would often simultaneously instruct all of the CSRs to take their phones off the hook for approximately 30-45 minutes on certain days (not every day.) Pl. Dep. 84-87. Admit that Ms. Roberts continued to allow all of the CSRs to continue this practice only until the end of April at which time she ordered all of them to stop doing it. Id.

36. See response to no. 35. Pl. Dep. 84-87.

37. Plaintiff admits that the following occurred on April 7, 2000 in the following order: First, Ms. Roberts requested that Plaintiff help her for 15 minutes with a particular assignment; Second Ms. Roberts then required Plaintiff's assistance throughout the remainder of the day; Third at some point later in the day, Plaintiff informed Ms. Roberts that she was 1 ½ days behind in her order entry assignments, however, Ms. Roberts did not respond to this information, but rather the day continued with Ms. Roberts giving Plaintiff other normal CSR responsibilities, including processing correspondence and responding to telephone inquiries. Later in the day, Ms. Roberts requested that Plaintiff help her out with her (Ms. Robert's) own orders by "proofing" the orders. Proofing refers to the process by which a CSR takes order entry assignments and verifies that the specific order information which was inputed (usually by another CSR) has in fact been correctly inputed into the system. Proofing is a process to ensure the accuracy

of information inputed into the system immediately before the order is actually released into the system and often takes more time to complete than actually placing the order itself. On April 7, 2000, Ms. Roberts was informed by Plaintiff that she was behind, but Ms. Roberts did not respond to this information on that date, but rather continued to have Plaintiff work on a multitude of *other* CSR related responsibilities.

38. Deny. Ms. Roberts did express two concerns which Plaintiff noted in her journal entry for April 10, 2000, which were that (1) Plaintiff was not keying fast enough in her opinion and (2) Plaintiff should stay home if she is not feeling well. There was no further discussion regarding any other issue on April 10, 2000.

39. Admit that Plaintiff requested a meeting regarding Ms. Roberts comments made at a *subsequent meeting on April 11, 2000*.

40. Admit that Plaintiff prepared a document in anticipation of an H.R. meeting, but not due to comments Ms. Roberts made to her on April 10, 2000.

41. Deny any meeting took place with Chantay Bynes on April 11, 2000 and deny that the meeting had any connection to comments made by Ms. Roberts to Plaintiff on April 10, 2000.

42. Deny, Defendant is confusing different meeting dates and the participants in the meetings.

43. See response to no. 42.

44. See response to no. 42.

45. See response to no. 42.

46. See response to no. 42.

47. See response to no. 42; Deny that Plaintiff commenced emailing Ms. Roberts per an "agreement" rather Ms. Roberts *ordered* Plaintiff to take on extra work assignment above and beyond that of her coworkers, that is, Ms. Roberts ordered Plaintiff to record her whereabouts and her accomplishments every thirty minutes and she further ordered Plaintiff to submit the report twice per day.

Deny that Plaintiff's reports were unprofessional or unnecessary, the reports were ordered in specific detail by Ms. Roberts.

48. Deny. Plaintiff assisted two temporary employees on a daily basis with "prepping" a process by which one CSR manually adds the total number of items and their prices to be ordered, manually adds the number of lines of orders involved and verifies that the customers address, PO number and delivery date have already been inputed into the system *before* the actual order is inputed into the system by another CSR. These temporary employees (CSRs) were hired just after Ms. Roberts was hired and Plaintiff was ordered to assist the two temporary employees daily by prepping their orders. She was never credited for this work and did not keep track of her assistance to the two temps in her journal. In addition, Plaintiff also served as back up for three other CSRs (Herta Page, Diane Saksa and Sandy Landro) and regularly performed their work, again without receiving credit by Ms. Roberts (or the Defendant) by way of computer tracking. Plaintiff denies the implication that she "failed" to do anything. Plaintiff was performing work responsibilities that were not required of other CSRs.

49. Deny. In fact Plaintiff was performing work responsibilities for her supervisor, Ms. Roberts and her co-workers. The work that the defendant claims to represent backlog on the part of the Plaintiff was in reality backlog on the part of Plaintiff's coworkers.

50. Admit that Plaintiff told Ms. Roberts on numerous occasions that she would do her best. Deny that Plaintiff attributed her low production numbers in early April to not feeling well, except on one or two specific days.

51. Admit that Ms. Roberts issued a written warning addressing her concerns relating to Plaintiff's performance. Deny that Plaintiff was averaging 15 orders per day. Admit that Ms. Roberts reminded Plaintiff daily of her expectations relating to order entry.

52. Admit.

53. Admit.

54. Admit.
55. Admit that Ms. Roberts ordered (as opposed to permitted) Plaintiff to remain off the telephone to answer consumer letters. Plaintiff was the only CSR who was ordered by Ms. Roberts to answering consumer letters during normal business hours. Other CSRs were given the privilege of answering consumer letters as overtime work. Admit that Plaintiff was instructed to improve her performance.
56. Admit.
57. Admit.
58. Admit.
59. Admit.
60. Deny.
61. Deny.
62. Admit.
63. Admit.
64. Deny. This is a blatant, intentional misstatement of what Plaintiff wrote in her diary.
65. Admit.
66. Admit that the meeting took place; deny that Plaintiff was not meeting expectations.
67. Admit with the exception that Plaintiff was permitted to refrain from answering the telephone for part of the day. Roberts allowed the entire group of CSR workers to refrain from answering the telephones, this was not a special favor granted to Plaintiff.
68. Deny that Plaintiff was not meeting expectations; admit that Defendant's employees set another two weeks for Plaintiff to meet their "phantom" expectations.
69. Admit that Plaintiff received repeated instructions regarding the number of orders the Defendant's employees expected her to complete on a daily basis.

70. Admit that Roberts ordered Plaintiff to report in twice per day and that these orders were a continuation of the same orders given by Roberts several weeks earlier.
71. Deny.
72. Deny.
73. Admit that Plaintiff received the letter; deny the explanation given by Ferrara was the true reason for her termination.
74. Admit.
75. Admit Order File Summary forms provide a *partial* tracking of a CSR's performance and *partially* show how many orders and lines each CSR entered every day.
76. Deny. The Order File Summary only provide a partial tracking of a CSR's performance and *partially* show how many orders and lines each CSR entered every day. On a daily basis the Plaintiff performed order entry work on accounts that were assigned to other CSRs when the CSRs fell behind in their work. In addition, Plaintiff often performed work in addition to her regularly assigned responsibilities that was not required of her fellow CSRs.

THE PLAINTIFF

BY _/s/ Max F. Brunswick_
MAX F. BRUNSWICK
Her Attorney
12 Trumbull Street
New Haven, CT 06511
(203) 562-4024
FAX: (203) 782-5979
Fed. Bar No.5918

## CERTIFICATION

A copy of the foregoing statement was sent by U.S. mail, first class, on August 16, 2004 to the following:

> Alison Jacobs Wice, Esq.
> Jackson Lewis, LLP
> 177 Broad Street
> Stamford, CT 06904

_/s/ Max F. Brunswick_
MAX F. BRUNSWICK