FILED

2004 AUG 19 P 1: 56

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Lila R. Davis,<br>　　Plaintiff | : NO. 3:01 CV 2204 (DJS)<br>:<br>: Jury Trial Demanded |
| Pilot Corporation of America,<br>　　Defendant | : June 21, 2004 |

## AFFIDAVIT FOR JUDY DEZENZIO

Personally appeared Judy DeZenzio, who being duly sworn, deposes and says:

1. I am over the age of eighteen and believe in the obligation of an oath.

2. I was employed by the Defendant company and during the course of my employment supervised the Plaintiff, Lila Davis.

3. I remained the Plaintiff's immediate supervisor from the time she was hired as a full time customer service representative, in August of 1999, until I resigned in March of 2000.

4. As part of my work related responsibilities, I evaluated the Plaintiff's performance and wrote the attached performance review with a heading that reads "Lila Davis Employee Status (90) day."

5. The evaluation was not intended to serve as a negative reprimand of the Plaintiff's performance.

6. The evaluation was not intended to put the Plaintiff on notice or to create a record that her work performance was problematic in any sense.

7. In fact, my purpose in writing the evaluation was to summarize for the Plaintiff how well she had taken advantage of her first ninety (90) days on the job.

8. The Plaintiff had utilized her first ninety (90) days on the job well, and had used the time well to master the basics of the multiple functions that customer service representatives were responsible for.

9. The Plaintiff was developing at a normal and satisfactory pace as a csr and was actually was very accurate.

10. In one sentence that I wrote, "Lila needs to develop a method to increase the speed of her order entry while maintaining her accuracy." This comment was not meant to be critical of her work performance at that point in time.

11. In fact, in writing that sentence (which must be read in proper context with the language in the entire paragraph) I meant to outline the next logical focus in the Plaintiff's professional development as a csr.

12. As the Plaintiff had mastered learning the basic responsibilities of a csr in her first 90 days, I wanted to direct her to spend the next nine (9) months focusing on the next phase in her professional development, that of increasing her capacity, picking up her speed and at the same time, maintaining her accuracy.

13. At that point in her professional development, I had no expectation that the Plaintiff should be as fast as her fellow csr who had more experience than she did.

14. I expected that the Plaintiff would be more likely than her co-workers to fall behind in her work and she was not expected to hold the same weight as the other csrs carried.

15. Moreover, due to the complexity of the csr position, Plaitniff was not expected to master the position in ninety (90) days, or even six (6) months for that matter.

16. In my professional estimation, one would need at least one full year in the position to fully master the responsibilities of a csr and become a viable contributor.

17. It would take at least one full year for a new csr to familiarize herself with the complications and idiosyncrasies of the Defendant's workplace and the customer service division specifically.

18. It would take at least one year to understand the nature of the Defendant's myriad products, shipping and delivery processes and the Defendant's mammoth customer base.

19. It would take at least one full year for a new csr to master the Defendant's workplace rules and to fully understand working as a team member of the customer service division.

20. In the seven (7) months that the Plaintiff remained employed, I believe it is fair to say that her work performance could not reasonably be compared to that of her fellow csrs, most of whom had more experience than she did.

21. Notwithstanding the experiences of her fellow csrs, it was in the general nature of the customer service division for *all* csrs to fall behind in their order entry work at certain regular time periods every year.

22. In particular, in line with the "back to school" season, from August through September, the customer service division, experiences a significant peak in customer ordering for a six to eight week period that would cause short term backlogs in order entry work for all csrs.

23. The Defendant likewise experienced similar significant peaks in customer ordering during the Christmas holiday season and late spring-early summer season, presumably coinciding with preparation for summer school/activities and corporate budgeting sessions.

24. During these peak ordering periods the csrs as a whole would fall behind in their order entry work usually between 1-2 days.

_____
Judy DeZenzio

Subscribed and sworn to before me this 12th day of August, 2004

_____
Notary Public
My Commission Expires:

SHARON A. WESCOTT
Notary Public, State of New York
Qualified in Onondaga County
No. 01WE6024375
My Commission Expires May 10, 20_06_

## CERTIFICATION

A copy of the foregoing affidavit was sent by U.S. mail, first class, on August 16, 2004 to the following:

>Alison Jacobs Wice, Esq.
>Jackson Lewis, LLP
>177 Broad Street
>Stamford, CT 06904

>_____
>MAX F. BRUNSWICK